## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| BRANDI THOMAS, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 20-cv-12 |
| | ) |
| | ) **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) |
| v. | ) |
| | ) **Jury Trial Demanded** |
| PATENAUDE & FELIX APC., TD BANK USA N.A., and TARGET CORPORATION, | ) |
| | ) |
| Defendants. | ) |

### INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

### JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

### PARTIES

3.     Plaintiff Brandi Thomas is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt incurred for personal, family, or household purposes.

5.     Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant Patenaude & Felix, A.P.C. ("Patenaude") is a foreign professional services corporation with its principal place of business located at 4545 Murray Canyon Road, Third Floor, San Diego, CA 92123.

7. Patenaude is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Patenaude is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Patenaude is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. TD Bank USA, N.A. ("TD Bank") is a national bank with its primary place of business located at 2035 Limestone Road, Wilmington, DE 19808.

11. TD Bank is the issuer of Target store-branded credit cards. *See* https://www.target.com/c/redcard/-/N-4tfyn (last accessed September 5, 2018).

12. Credit card accounts are "open-end credit plans," pursuant to Wis. Stat. § 421.301(27)(a). "Open-end credit plans" are, by definition, "consumer credit transactions." Wis. Stat. § 421.301(10) ("The term [consumer credit transaction] includes … transactions pursuant to open-end credit plans.")

13. TD Bank is thus a "merchant" as defined in the WCA, as the alleged debts arise from use of Plaintiff's consumer credit accounts. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

14. Target Corporation ("Target") is a foreign corporation with its principal place of business located at 1000 Nicollet Mall, Minneapolis, MN 55403.

15.     Target is the servicer of Target store-branded credit card accounts.

16.     Target and TD Bank, directly or indirectly through Target and Patenaude, are engaged in the business of collecting debts owed to TD Bank that were incurred for personal, family, or household purposes.

17.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

18.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

19.     On its face, the WCA's regulation of debt collectors applies without distinction to creditors collecting on their own behalf, to creditors who hire other debt collectors to collect on the creditor's behalf, and to third-party debt collectors acting on behalf of creditors. *See* Wis. Stat. § 427.103(3).

20.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

21.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to

3

them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

22. Target and TD Bank, directly or indirectly, are each a debt collector under Wis. Stat. § 427.103(3).

23. Any company meeting the definition of a "debt collector" (here, TD Bank) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

### *Target's December 10, 2018 and December 19, 2018 Letters*

24. On or about December 10, 2018, Target mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Target Card Services, Inc., servicer to TD Bank USA, N.A." A copy of this letter is attached to this Complaint as Exhibit A.

25. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, including purchases of household goods and clothing at Target stores.

26. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

27. Upon information and belief, Exhibit A is a form debt collection letter used by Defendants to attempt to collect alleged debts.

28. Exhibit A states that it is "an attempt to collect a debt."

4

29.  <u>Exhibit A</u> further states:

**Past Due Target Credit Card™ - Potential Placement with Law Firm**
Account ID:████████9095

. . .

If we aren't able to set up an acceptable solution for your account by 01-02-2019, it is likely that we will refer your account to the law firm of Patenaude & Felix for further collection efforts, including evaluation for possible legal action.

<u>Exhibit A</u>.

30.  On or about December 19, 2018, Target mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Target Card Services, Inc., servicer to TD Bank USA, N.A." A copy of this letter is attached to this Complaint as <u>Exhibit B</u>.

31.  Upon information and belief, the alleged debt referenced in <u>Exhibit B</u> was the same alleged debt referenced in <u>Exhibit A</u>.

32.  Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

33.  Upon information and belief, <u>Exhibit B</u> is a form debt collection letter used by Defendants to attempt to collect alleged debts.

34.  <u>Exhibit B</u> states that it is "an attempt to collect a debt."

35.  <u>Exhibit B</u> further states:

**Final Notice Before Law Firm Placement**

Dear Brandi S Thomas,

If we do not receive an acceptable payment, your Target Credit Card account will be placed with the law firm of Patenaude & Felix for further collection efforts, including evaluation for possible legal action.

<u>Exhibit B</u>.

5

*Target's January 5, 2019 Account Statement and Patenaude's January 7, 2019 Letter*

36.     On or about January 5, 2019, Target mailed an account statement to Plaintiff regarding the same alleged debt referenced in Exhibits A and B.   A copy of this account statement is attached to this complaint as Exhibit C.

37.     Exhibit C contains the following:

| Payment Information | |
| --- | --- |
| New Balance | $2,209.24 |
| Minimum Payment Due | $442.00 |
| Payment Due Date | 2/2/2019 |

Exhibit C.

38.     On or about January 7, 2019, Patenaude mailed a debt collection letter to Plaintiff regarding the same alleged debt referenced in Exhibits A-C.   A copy of this letter is attached to this Complaint as Exhibit D.

39.     Exhibit D is virtually identical to a letter at issue in *Voeks v. Patenaude & Felix, A.P.C.*, Case No. 18-cv-1393-LA.

40.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

41.     Upon information and belief, Exhibit D is a form debt collection letter used by Defendants to attempt to collect alleged debts.

42.     Upon information and belief, Exhibit D was the first letter Patenaude sent Plaintiff regarding the alleged debt to which the letter refers.

43.     Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

6

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit D.

44.    Exhibit D states that the "Total Balance" is $2209.24.

45.    Exhibit D also states that the "Minimum Due" is $442.00.

46.    Taken together, Exhibit A, B, and D represent that an attorney had become meaningfully involved in Plaintiff's account when Exhibit D was mailed.

47.    Exhibits A and B specifically warn Plaintiff that the account will be referred to Patenaude for "evaluation for possible legal action."

48.    The unsophisticated consumer understands that a "law firm placement" for "evaluation for possible legal action" would be performed by an attorney.

49.    The unsophisticated consumer receiving Exhibits A and B would understand that Target and TD Bank was retaining Patenaude to perform the "evaluation for possible legal action."

50.    Exhibit D is printed on Patenaude's letterhead:

## LAW OFFICES OF
# PATENAUDE & FELIX, A.P.C.
### A PROFESSIONAL LAW CORPORATION

Exhibit D.

7

51.     The first sentence in the body of Exhibit D states that "the above-referenced debt has been assigned to this firm to initiate collection efforts regarding your delinquent outstanding balance to our client."

52.     Exhibit D also purports to be hand-signed:

Very truly yours,

LAW OFFICE OF PATENAUDE & FELIX

Exhibit D.

53.     The unsophisticated consumer reviewing Exhibit D would understand that it was hand-signed by an attorney on behalf of the "Law Office of Patenaude & Felix."

54.     Exhibit D, on its face, implies that an attorney was meaningfully involved in the collection of the alleged debt at the time Exhibit D was mailed.

55.     The unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

56.     The Seventh Circuit has stated:

An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.

. . .

If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file.

8

*Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996); *see also, Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

57.     The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the letters attempted to disclaim attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

58.     The Fifth Circuit has held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter." *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009) (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005)).

59.     In *Greco*, the Second Circuit held that a debt collector did not confuse or mislead the consumer to believe that an attorney had become professionally involved in the consumer's file by including the following disclaimer:

> At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.  However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.

*Greco*, 412 F.3d at 361, 365.

60.     Numerous courts throughout the country have adopted the reasoning in *Greco*, and held that a law firm acting as a debt collector will not mislead the consumer as long as it *unambiguously* states that "no attorney has reviewed the account."[1]

---

[1] *E.g., Davis v. Lyons, Doughty & Veldhuis, P.A.*, 855 F. Supp. 2d 279, 283 (D. Del. 2012) ("A letter violates § 1692e(3) if it can be read to have two meanings, one of which implies it is from an attorney.") (citing *Rosenau*, 539 F.3d at 223); *Altieri v. Overton, Russell, Doerr, & Donovan, LLP*, 281 F. Supp. 3d 254, 260 (N.D.N.Y. 2017) ("A law firm or an attorney may send a debt collection letter 'without being meaningfully involved as an attorney,' provided a 'clear disclaimer' explains 'that the law firm or attorney sending the letter is not, at the time of the transmission, acting as an attorney.")

61.     <u>Exhibit D</u> does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005), and the cases that follow it.

62.     Upon information and belief, at the time <u>Exhibit D</u> was mailed to Plaintiff, no attorney had assessed the validity of the alleged debts to the standards required of an attorney. *See, e.g., Boerner v. LVNV Funding LLC*, No. 17-cv-1786-JPS, 2018 U.S. Dist. LEXIS 124045, at *30 ("A debt collector violates Section 1692e(3) when a communication purports to come

---

(quoting *Greco*, 412 F.3d at 364); *Davis-Fisk v. Overton*, No. 17-cv-1047, 2018 U.S. Dist. LEXIS 159849, at *9 (N.D.N.Y. Sept. 19, 2018) (same); *Jones v. Dufek*, 830 F.3d 523, 527 (D.C. Cir. 2016) ("Since *Greco*, many circuits have agreed that a prominent and clear disclaimer stating that an attorney is acting as a debt collector is enough, but a hidden or confusing disclaimer is not.") (emphasis added); *Spurgeon v. Frederick J. Hanna & Assocs., P.C.*, No. 14-cv-3098, 2015 U.S. Dist. LEXIS 32578, at *9 (D. Neb. Mar. 17, 2015) ("Letters that courts have found acceptable have contained, either in the body of the letter or otherwise prominently displayed on the same page as the body of the letter, disclaimers informing the consumer that no attorney has reviewed the consumer's file and that the attorney or firm has not been presently retained to file suit."); *Peak v. Southern & Allen*, No. 09-cv-753, 2010 U.S. Dist. LEXIS 41101, at *12 (E.D. Ark. Apr. 27, 2010) ("the disclaimer in the Letter makes clear that no lawyer has reviewed Plaintiff's account.") (emphasis added); *Eddis v. Midland Funding, L.L.C.*, No. 11-3923, 2012 U.S. Dist. LEXIS 22193, at *23-24 (Feb. 22, 2012); *Powell v. Aldous & Assocs., P.L.L.C.*, No. 17-3770, 2018 U.S. Dist. LEXIS 982, at *11 (D.N.J. Jan. 3, 2018) ("Most pertinently, it contains the prominent statement, 'At this time not [*sic*] attorney with this firm has personally reviewed the particular circumstances of your account.") (emphasis added, alteration in original); *Gillen v. Kohn Law Firms S.C.*, No. 13-cv-373, 2015 U.S. Dist. LEXIS 39133, at *8-9 (Mar. 26, 2015) (letter stated "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of this matter."); *Bencosme v. Stillman Law Offices, LLC*, 18-cv-3304, 2018 U.S. Dist. LEXIS 166254, at *3, 10-11 (D.N.J. Sept. 24, 2018) (denying motion to dismiss attorney involvement claim where dunning letter was mailed on attorney letterhead and contained the following disclaimer: "we have been asked to contact you to determine your intentions with respect to repayment of this debt. We have not been retained to file a lawsuit against you. Further, at this time, no attorney with this firm has personally reviewed the particular circumstances of your account."); *Fosen v. Weinstein & Riley, P.S.*, No. 12-cv-662, 2013 U.S. Dist. LEXIS 114610, at *18 ("whether such a lawyer has actually reviewed the file must be clear from the letter, through a disclaimer or otherwise.") (E.D. Tex. Aug. 14, 2013); *Martinez v. Johnson*, No. 11-cv-157-DN, 2013 U.S. Dist. LEXIS 35826, at *25 (D. Utah Mar. 14, 2013) ("When a lawyer sends out a debt collection letter, he or she must either have determined that the claim is valid and the debtor is delinquent, or the letter must make clear that no attorney has made that determination.") (citing *Clomon*, 988 F.2d 1314 and *Greco*, 412 F.3d 360); *Derry v. Buffalo & Assocs., PLC*, 958 F. Supp. 2d 839, 844 (E.D. Tenn. 2013) ("where, as here, an unambiguous disclaimer informs the debtor no attorney has reviewed the file, courts have concluded the communications do not violate § 1692e(3).").

from an attorney who in reality was not involved in or supervising the process of creating and sending the communication.") (citing *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002) and *Avila*, 84 F.3d at 229)).

63.　Patenaude is a high-volume debt collector.

64.　Upon information and belief, at the time Exhibit D was mailed to Plaintiff and other consumers in the State of Wisconsin, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

65.　Upon information and belief, from the time that consumer debts are placed with Patenaude for collection until the time that a legal complaint is drafted, the only employees of Patenaude who are directly involved in the collection process of consumer debts are non-attorneys.

66.　Moreover, Patenaude is frequently engaged to send collection letters to consumers with no intent that Patenaude will ever file a lawsuit to collect the debt.

67.　Upon information and belief, a significant portion of Patenaude's debt collection activities during that time period consists of computer-automated processes, including sending computer-generated form letters like Exhibit D.

68.　Upon information and belief, at the time Exhibit D was mailed to Plaintiff and the class, no attorney associated with Patenaude had reviewed any documentation underlying the alleged debts, including but not limited to any contract, payment history or any other documents establishing or evidencing the alleged debts. *See, e.g.,* Consumer Financial Protection Bureau Files Suit Against Forster & Garbus, LLP, Consumer Financial Protection Bureau Press Release dated May 17, 2019 (available at: https://www.consumerfinance.gov/about-us/newsroom/bureau-files-suit-against-forster-garbus-llp/) (accessed: May 22, 2019) (alleging that debt collection law

firm filed consumer debt collection lawsuits without having its attorneys review underlying account documentation or becoming otherwise meaningfully engaged in the process).

69.     Upon information and belief, at the time Exhibit D was mailed to Plaintiff, no attorney associated with Patenaude had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Patenaude or a third-party mailing company generated and mailed Exhibit D as part of a batch of identical, except for personal information, form debt collection letters.

70.     Upon information and belief, at the time Exhibit D was mailed to Plaintiff, no attorney associated with Patenaude had exercised the professional judgment of an attorney that Plaintiff or any other class member was delinquent on his or her debt and a candidate for legal action, nor was any attorney associated Patenaude meaningfully involved in the decision to send Exhibit D to Plaintiff.

71.     Upon information and belief, no attorney associated with Patenaude personally reviews each consumer's account in any meaningful sense, before a letter in the form of Exhibit D is mailed.

72.      Upon information and belief, no attorney associated with Patenaude makes an individualized assessment of the consumer's circumstances or liability, before Exhibit D is mailed to each consumer.

73.     Upon information and belief, Patenaude, TD Bank, and Target are all aware of the representations in each of Exhibits A, B, and D.

74.     TD Bank is a national credit card lender whose Target credit card portfolio was worth $6 billion in 2012.  TD Bank and Target do not forward every allegedly delinquent account, or even every account belonging to a Wisconsin consumer, to an attorney if not

resolved in non-attorney collections. Upon information and belief, TD Bank and Target often refer accounts to Patenaude and other debt collection law firms for the mailing of letters like Exhibit D instead of litigation.

### *Target's February 5, 2019 Account Statement and Patenaude's February 12, 2019 Letter*

75. On or about February 5, 2019, Target and TD Bank mailed an account statement to Plaintiff regarding the same alleged debt referenced in Exhibits A-D. A copy of this letter is attached to this Complaint as Exhibit E.

76. Exhibit E contains the following:

| Payment Information | |
|---|---|
| New Balance | $2,295.02 |
| Minimum Payment Due | $550.00 |
| Payment Due Date | 3/2/2019 |

Exhibit E.

77. Exhibit E represents that Plaintiff could return the defaulted account to current status by tendering the minimum payment amount, $550.00, on or before March 2, 2019.

78. Exhibit E represents that Target and TD Bank had not accelerated the debt and would not accelerate it until at least March 2, 2019.

79. On or about February 12, 2019, Patenaude mailed a debt collection letter to Plaintiff regarding the same alleged debt references in Exhibits A-E. A copy of this letter is attached to this Complaint as Exhibit F.

80. Upon information and belief, Exhibit F is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

81. Upon information and belief, Exhibit F is a form debt collection letter used by Defendants to attempt to collect alleged debts.

13

82.     The header in Exhibit F states that the "Total Balance" is $2295.02.

83.     The header in Exhibit F also states that the "Proposed Settlement" is $1377.01.

84.     The body in Exhibit F states:

Our client will accept SIXTY PERCENT (60%) of the total balance due as a full settlement of your account. The settlement amount of $1377.01 would be due on or before March 02, 2019. The settlement arraignment must be confirmed with our office prior to receipt of funds.

Exhibit F.

85.     Exhibit F does not disclose that Plaintiff could bring the account current by tendering a minimum payment.

86.     Exhibit F represents that, on February 12, 2019, $2,295.02 was the "total balance due."

87.     The account information in Exhibit E is inconsistent with the account information in Exhibit F. According to Exhibit E, the total balance was not *due* when Exhibit F was mailed.

88.     Moreover, Patenaude lacked the legal authority to demand the total balance of the account. Credit card transactions are, by definition, consumer credit transactions. Wis. Stat. § 421.301(10).

89.     Upon information and belief, at the time Patenaude sent Exhibit E to Plaintiff, the creditor had not provided Plaintiff with notice of her right to cure the default on her account, which is required before accelerating the debt. Wis. Stat. § 425.105(1), (2). The creditor and Patenaude thus lacked the right to accelerate the maturity of the credit card account.

90.     By representing that the total balance of Plaintiff's alleged debt was due as of the date of the letter, Exhibit F includes representations that are false, deceptive, and misleading as to the character, amount, and legal status of such debt. *See* FTC Staff Commentary, 53 Fed. Reg. 50097, 50106 ("A debt collector may not ... falsely assert that the debt has matured or that it is immediately due and payable, when it is not.").

91. The Seventh Circuit has previously explained that a debt collector collecting on an open credit card account would confuse and mislead consumers if it stated the total balance without disclosing that the consumer could bring the account current by paying a lesser amount because "she might pay the larger amount thinking she would be sued otherwise, even though the extra $ 200 might not yet be due, let alone overdue." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004); *see also, Machnik v. RSI Enters.*, No. 17-cv-864, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' For example, a debtor might 'owe' a certain amount on a loan, but only a portion of that amount will be 'due' at a particular time."); *Gathuru v. Credit Control Servs.*, 623 F. Supp. 2d 113, 121 (D. Mass. 2009) ("[A collection letter] certainly cannot state than an amount is 'due' when, in fact, it is not.").

92. Exhibit F misstates the amount due.

93. To date, Defendants still have not filed a lawsuit against Plaintiff to collect the alleged debt referenced in Exhibits A-F.

94. Plaintiff read Exhibits A-F.

95. Plaintiff was misled, deceived, and confused by Exhibits A-F.

96. The unsophisticated consumer would be misled, deceived, and confused by Exhibits A-F.

97. Plaintiff had to spend time and money investigating Exhibits A-F.

98. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-F.

15

### The FDCPA

99.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25,

16

2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

100. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

17

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

101.    Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

102.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

103.    15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

104. 15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

105. 15 U.S.C. § 1692e(5) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

106. 15 U.S.C. § 1692e(10) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

107. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

108. 15 U.S.C. § 1692g(a)(1) requires that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," that a debt collector provide notice of "the amount of the debt."

### The WCA

109. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

110. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

111. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

112.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

113.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

114.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

115.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

116.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

117.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

118.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

119.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

120.    Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

121.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

122.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

123.    Count I is brought against Defendant Patenaude.

124.    Exhibit E, mailed on February 5, 2019, states that Plaintiff could bring her account current by tendering a minimum payment in the amount of $550.00 on or before March 2, 2019.

125.    Exhibit F, mailed on February 12, 2019, states that the "total balance due" is $1,377.01 and does not reference any minimum payment.

126.    Exhibits E and F together are inconsistent and confusing.  The unsophisticated consumer would not know whether Defendants had accelerated the balance of the account and whether she could bring the account current by tendering a minimum payment.  *See, Chuway*, 362 F.3d at 947-48.

127.    Exhibit F is false, deceptive, and misleading as to the character, amount, and legal status of the debt, and is an attempt to coerce Plaintiff into paying portions of the account that are not yet due, and which Patenaude had no right to demand.

128.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT II – WCA

129.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

130.    Count II is brought against all Defendants.

131.    Exhibit E, mailed on February 5, 2019, states that Plaintiff could bring her account current by tendering a minimum payment in the amount of $550.00 on or before March 2, 2019.

132.    Exhibit F, mailed on February 12, 2019, states that the "total balance due" is $1,377.01 and does not reference any minimum payment.

133.    Exhibits E and F together are inconsistent and confusing.  The unsophisticated consumer would not know whether Defendants had accelerated the balance of the account and

22

whether she could bring the account current by tendering a minimum payment. *See, Chuway*, 362 F.3d at 947-48.

134. <u>Exhibit F</u> is false, deceptive, and misleading as to the character, amount, and legal status of the debt, and is an attempt to coerce Plaintiff into paying portions of the account that are not yet due, and which Patenaude had no right to demand.

135. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

136. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

137. Count III is brought against Defendant Patenaude.

138. <u>Exhibits A, B, and D</u> create the false impression that an attorney at Patenaude had personally reviewed the circumstances of Plaintiff's alleged debt and <u>Exhibit D</u> itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time the letter was mailed.

139. Before mailing <u>Exhibit D</u> to Plaintiff, no attorney at Patenaude had any meaningful involvement with Plaintiff's or any other Wisconsin consumer's alleged debts or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

140. Defendant violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 15 U.S.C. § 1692f.

## COUNT IV – WCA

141. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

142. Count IV is brought against all Defendants.

143. Exhibits A, B, and D create the false impression that an attorney at Patenaude had personally reviewed the circumstances of Plaintiff's alleged debt and Exhibit D itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time the letter was mailed.

144. Before mailing Exhibit D to Plaintiff, no attorney at Patenaude had any meaningful involvement with Plaintiff's or any other Wisconsin consumer's alleged debts or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

145. Defendants violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

146. Plaintiff brings this action on behalf of two classes.

147. Class I consists of: (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters and account statements in the form represented by Exhibits A, B and D to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the last letter in the series was mailed between January 3, 2019 and January 3, 2020, inclusive, (e) and none of the letters was returned by the postal service.

148. Class II consists of: (a) all natural persons in the United States (b) who were sent a series of collection letters and account statements in the form represented by Exhibits E and F to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the last letter in the series was mailed between January 3, 2019 and January 3, 2020, inclusive, (e) and none of the letters was returned by the postal service.

149. Each Class is so numerous that joinder is impracticable.

150. Upon information and belief, there are more than 50 members of each class.

24

151. There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants violated the FDCPA and/or WCA.

152. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

153. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

154. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

155. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: January 3, 2020

**ADEMI & O'REILLY, LLP**

By:    /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)

25

Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000 | (414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com